(March 24, 1988)

■ DONALD CHUSID et al., as Executors of ANNE CHUSID, Deceased, Respondents, v BENJAMIN H. WRIGHT et al., Appellants.—Order, Appellate Term (Hughes, Riccobono, Parness, JJ.), entered May 5, 1987, which, *inter alia,* affirmed an order, Civil Court, New York County (Charles Ramos, J.), entered May 9, 1986, which granted petitioners' motion for renewal, and, upon renewal, granted summary judgment in favor of petitioners, affirmed, without costs or disbursements.

In this holdover proceeding petitioners, the landlords, seek to recover possession of the apartment because the tenant of record, Benjamin Wright, who owns three apartments in the same building, does not occupy the apartment as his primary residence. For the last five years the sole occupant of the apartment has been Elizabeth Jason, Wright's mother-in-law. As the dissent notes, the parties agree that the determinative issue is whether Jason's tenancy was effectively recognized by the landlords. Civil Court granted summary judgment to petitioners and Appellate Term affirmed. We agree that a factual issue is not raised, and also affirm.

The thrust of Jason's claim is that petitioners were aware of and accepted her occupancy, and that petitioners recognized her tenancy when they accepted her execution of a subscription agreement for the apartment pursuant to a plan converting the building into a cooperative corporation. The claim that petitioners recognized Jason's tenancy is without support in the record. All rent for the apartment was paid by Wright. Jason never tendered rent. The registration statement on file for the apartment with the Department of Housing and Community Renewal designates Wright as the tenant of record, and in correspondence with the Attorney-General concerning the conversion plan Wright was always listed as the tenant.

Nowhere in writing have the landlords ever acknowledged Jason's tenancy, and, indeed, nothing can be discerned in the record indicating that the landlords were even aware of her occupancy of the apartment.

The claim that the execution of the subscription agreement created a legal tenancy is equally specious. The agreement was executed on November 8, 1983. The plan had been declared effective on October 3, 1983, with 17 subscribers, 2 more than the minimum needed to make the plan effective. Thus, at the time Jason executed the agreement, albeit at an insider's price, outsiders could have subscribed to purchase her apartment, or any other occupied apartment in the building. Acceptance of an agreement to purchase would only have given the subscriber the right to purchase the apartment. Without a purchase the subscriber could not lay claim to any right to occupy the apartment, and certainly could not claim any rights as a tenant, whether statutory or contractual.

Jason's execution of the subscription agreement was conditioned upon Wright's waiver of his right to purchase as the tenant of record. Wright consented in writing to Jason's purchase on November 8, again, after the plan had already been declared effective. It would appear that Wright had forfeited his right to purchase before the plan had been declared effective, since an insider's right to purchase would have lapsed before that date. Perhaps he did so in order to permit Jason the opportunity to purchase. Speculation on this point is, of course, useless, but also irrelevant, since all Jason could acquire by any assignment, explicit or implied, was the right to purchase, not rent-controlled status.

Jason, whose sole relationship is that of a subscriber to a conversion plan, cannot attain tenant status, particularly rent-controlled tenancy, by means of subterfuge. As has been noted, "The creation of a landlord-tenant relationship should not be reduced to a matter of gamesmanship, seduction and artifice" (Metropolitan Life Ins. Co. v Sucdad, NYLJ, Aug. 6, 1985, at 6, col 1 [App Term, 1st Dept]). Jason's execution of a subscription agreement (in which apparently she has lost interest), offered to her only after the tenant of record had waived his right to purchase the apartment, is nothing more than an attempt to achieve tenant status and should not be rewarded. In any event, though, petitioners' acceptance of her execution of the subscription agreement gave Jason nothing more than the right to purchase the apartment. Concur—Kupferman, Sullivan and Carro, JJ.

Murphy, P. J., and Milonas, J. dissent in a memorandum by

Milonas, J., as follows: Pursuant to the instant holdover proceeding, petitioners landlords seek possession of the subject apartment on the ground that the tenant of record, Benjamin H. Wright, does not occupy the premises as his primary residence. It is undisputed that the tenant and his wife do not reside in the apartment, and, indeed, they do not challenge the final judgment of possession in favor of petitioners, entered on March 20, 1986. However, since December of 1982, the apartment has been occupied by Elizabeth Jason, the tenant's elderly mother-in-law. The parties agree that the dispositive issue to be determined here is whether Jason was accepted and recognized as a tenant by the landlords. In that regard, she has never tendered, nor have the landlords received from her, rent for the premises. The registration for the apartment filed with the New York State Department of Housing and Community Renewal lists Wright as the tenant of record. In addition, there is no assertion by Jason of any other affirmative act on the part of petitioners indicating that they have ever acknowledged her as the tenant. Rather, Jason's claim of tenancy is founded solely upon the events surrounding her execution of a subscription agreement to purchase the subject apartment in connection with the proposed cooperative conversion of the building in question and her continued residence in the apartment.

It is Jason's contention that petitioners have been aware for years that she has been living in the apartment and have, moreover, entered into a subscription agreement with her whereby she committed herself to purchasing the shares for the subject apartment. Jason further states that, in fact, her residency was with the consent and connivance of petitioners in that the latter, needing to secure the requisite number of subscribers to convert the building to cooperative ownership, wanted her in the apartment. In ultimately granting summary judgment in favor of petitioners, the Civil Court held that whatever rights Jason may have possessed under the subscription agreement, petitioners did not act in such a manner as would demonstrate an intention to accept Jason as a tenant. On appeal, the Appellate Term, in an order entered on May 5, 1987, affirmed the grant of summary judgment "without prejudice to the enforcement of her contractual rights." According to the Appellate Term, the fact that the landlords had offered a subscription agreement to Jason does not mean that they thereby conferred upon her statutory rights as a tenant. Thereafter, in an order entered on June 19, 1987, the Appellate Term denied the motion by respondent

undertenant Jason for leave to appeal to the Appellate Division, and this court granted permission to appeal on July 30, 1987.

In my opinion, there is a sufficient factual dispute involved herein to preclude summary judgment and require a trial, particularly in view of Jason's long-term occupancy of the apartment without the evident objection of petitioners. They did not merely accept her subscription agreement; they allowed her to continue in possession over an extended period of time so that they could make use of her presence by providing themselves with another subscriber to the conversion plan. It is also instructive to note that the landlords' attorney apparently informed the Attorney-General that the tenant in occupancy, Wright, had waived his rights to purchase as an insider and assigned them to Jason, who was now the principal resident of the subject apartment and that Jason would be exercising the rights of the previous tenant, Wright. Futhermore, notwithstanding petitioners' argument that Jason's rights to purchase are separate and apart from her status as a tenant, the fact is that the conversion plan is noneviction, and, thus, if Jason were to be evicted from the apartment but still be deemed entitled to purchase, she might have to do so subject to a tenant. It is highly doubtful whether this 79-year-old woman would desire to invest in real estate and become a landlord herself.

The function of summary judgment is issue finding, not issue determination *(Double A Limousine Serv. v New York, N. Y. Limousine Serv.,* 130 AD2d 403). Considering that Jason resided in the subject apartment for years with the knowledge of petitioners, that they entered into a contractual agreement with her and that they seem to have treated her as a potential "inside" purchaser, I do not believe that it can be found as a matter of law that Jason was not a tenant. It may be that the evidence at trial would ultimately show that petitioners never intended to confer upon her the status of a tenant. Yet, she should be at least be accorded the opportunity to prove her claim that petitioners recognized her tenancy.