Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal (2018 NY Slip Op 04381)

Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal

2018 NY Slip Op 04381 [31 NY3d 679]

June 14, 2018

Feinman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 10, 2018

[*1]

In the Matter of Brookford, LLC, Appellant,
v
New York State Division of Housing and Community Renewal et al., Respondents.

Argued May 2, 2018; decided June 14, 2018

Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal, 142 AD3d 433, affirmed.

{**31 NY3d at 683} OPINION OF THE COURT

Feinman, J.

The central question on this appeal is whether, pursuant to the Rent Regulation Reform Act of 1993, the New York State Division of Housing and Community Renewal (DHCR) rationally determined that income reported on a joint tax return filed on behalf of an occupant and non-occupant of a housing accommodation may be apportioned to determine the occupant's individual annual income for purposes of ascertaining if the deregulation income threshold has been met. We hold that DHCR's interpretation was rational and does not run counter to the language of the statute. Therefore, we affirm.
Petitioner Brookford, LLC is the owner of the building where respondent Margaret S. Friedman is a tenant of the subject rent-controlled apartment. On April 27, 2006, pursuant to the{**31 NY3d at 684} New York City Rent Control Law (Administrative Code of City of NY § 26-401 et seq. [RCL]), petitioner served tenant and her husband with an Income Certification Form (ICF), to which they did not respond. As a result, petitioner filed a petition with respondent DHCR, to verify whether the total annual income of the occupants of the subject apartment exceeded the deregulation income threshold for the two years preceding the filing of the ICF. Tenant answered, asserting that her husband permanently moved out of the residence and into a nursing home in March 2005, over a year before the ICF was served. Accordingly, tenant apportioned the income reported on the joint tax return filed by her and her husband for the 2004 and 2005 calendar years, and based on that apportionment, listed her total annual income as below the relevant [*2]income threshold for both years. DHCR denied owner's petition for deregulation and subsequent petition for administrative review.
Petitioner timely commenced a CPLR article 78 proceeding, arguing, inter alia, that DHCR's denial was "arbitrary, capricious[,] and irrational" because according to documents petitioner obtained pursuant to a Freedom of Information Law (Public Officers Law art 6-A) request, tenant and her husband's combined income exceeded the income threshold for the 2004 and 2005 calendar years. Supreme Court affirmed DHCR's order and denied owner's article 78 petition. On appeal to the Appellate Division, DHCR moved for an order of remand. The Appellate Division granted DHCR's motion, and on remand, DHCR again denied the petition for administrative review. Petitioner then commenced the instant article 78 proceeding, challenging DHCR's determination. Supreme Court denied petitioner's challenge and dismissed the proceeding. The Appellate Division affirmed, holding that "DHCR, as per the statute, properly excluded the income of [tenant's] husband from the total annual calculation income for 2004 and 2005" (Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal, 142 AD3d 433, 434 [1st Dept 2016]). The Appellate Division granted petitioner leave to appeal to this Court (2016 NY Slip Op 90144[U] [1st Dept 2016]).
"In reviewing an administrative agency determination, we must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149 [2002]; see CPLR 7803 [3]). Where the rationality of an agency's determination is based on the interpretation{**31 NY3d at 685} of a statute, this Court must consider the language of the statute as well as the legislative intent (see generally Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149-150 [2002]; Matter of SIN, Inc. v Department of Fin. of City of N.Y., 71 NY2d 616, 620 [1988]).
The Rent Regulation Reform Act of 1993 (RRRA-93) was passed to create "[a] sound housing policy . . . equitable to both tenants and owners" (see Introducer's Mem in Support, Bill Jacket, L 1993, ch 253 at 10 [emphasis added]). In furtherance of this purpose, RRRA-93 provides a procedure by which owners can seek deregulation of housing accommodations subject to RCL § 26-403.1 (see McKinney's Uncons Laws of NY § 26-403.1 [L 1993, ch 253, § 5, as amended]). For proceedings commenced before July 1, 2011, RCL § 26-403.1 (a) (2) allows for the deregulation of a housing accommodation when, among other things, the "total annual income" exceeds $175,000 in the two calendar years preceding the filing of an ICF.[FN1] "Total annual income means the sum of the annual incomes of all persons who occupy the housing accommodation as their primary residence other than on a temporary basis" (RCL § 26-403.1 [a] [1] [emphasis added]). Annual income is defined as the federal adjusted gross income (AGI) as reported on the New York State income tax return (see RCL § 26-403.1 [a] [1]).
Petitioner's main contention is that because, under federal tax law, a joint tax return results in joint tax liability attributable to both filers (see 26 USC § 6013 [d] [3]), under the RCL, tenant's federal AGI cannot be apportioned and therefore her total annual income exceeds the income threshold. Petitioner offers no sound explanation why federal income tax liability should be outcome determinative of how DHCR interprets and applies the RCL.[FN2]
To be sure, RCL § 26-403.1 (a) (1) characterizes annual income as the federal AGI. The statute also provides that total annual income is calculated as the "sum" of the annual incomes of all those "who occupy the housing accommodation as their primary residence" (RCL § 26-403.1 [a] [1]). To read the statute as petitioner and the dissent suggest would mean that total{**31 NY3d at 686} annual income may include those persons who do not occupy the housing accommodation as their primary residence. "Such a construction, 'resulting in the nullification of one part of the [statute] by another,' is impermissible, and violates the rule that all parts of a statute [*3]are to be harmonized with each other" (Rangolan v County of Nassau, 96 NY2d 42, 48 [2001] [citations omitted], quoting Matter of Albano v Kirby, 36 NY2d 526, 530 [1975]; see Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 153 [2001]).
Rather, RCL § 26-403.1 anticipates that in order to determine whether total annual income exceeds the deregulation threshold (see RCL § 26-403.1 [c] [1]), DHCR must work cooperatively with the Department of Taxation and Finance (DTF) to "verify the total annual income of all persons residing in housing accommodations as their primary residence" (Tax Law § 171-b [3] [b] [emphasis added]). Understanding that in certain instances, this verification process may require a more involved assessment of federal AGI, the legislature, as part of RRRA-93, explicitly "authorized and directed [DTF] to enter into an agreement with [DHCR,]" and "to adopt rules and regulations to effect the provisions of this subdivision" (Tax Law § 171-b [3] [a] [L 1993, ch 253, § 10, as amended]). The result was an October 1994 Memorandum of Understanding (MOU) between DHCR and DTF, which set forth a procedure for "when one or more residents of the rent regulated housing accommodation files a joint New York State personal income tax return with a spouse who does not live in the rent regulated housing accommodation." As the MOU explains, this procedure allows "such individuals to segregate the items of federal [AGI] of the nonresident spouse so those amounts will not be included in the income determination."
DHCR's decision to deny petitioner's application for deregulation was neither arbitrary nor capricious. The process outlined in the 1994 MOU is premised on a rational interpretation of RRRA-93. The income of tenant's husband was properly excluded from the calculation of total annual income because he was not an occupant of the housing accommodation when the ICF was served. Consequently, tenant's total annual income—as the sole occupant of the housing accommodation—was below the income deregulation threshold.
The dissent misapprehends our analysis (see dissenting op at 691). Our conclusion is simply that the dissent's construction of the statute effectively nullifies the provision defining total annual{**31 NY3d at 687} income (see supra at 
685-686). The dissent states that " '[a]nnual income' is counted only for those using the apartment as a primary residence"—it then proceeds to count the income of tenant's spouse, a nonresident of the housing accommodation (see dissenting op at 
691 [emphasis added]). The dissent offers no explanation as to how it would resolve this conflict. Instead, it questions the rationality of our analysis by offering a hypothetical situation where a wealthy couple who have multiple residences "manipulate[s] the verification process" so that they can apportion their income and keep their New York City apartment rent-stabilized (see dissenting op at 
691).
In the present case, there is no question of "manipulation" as petitioner now concedes that tenant's husband vacated the apartment in 2005 due to illness and died thereafter. Moreover, if the dissent's concern is fraud, then the owner is not without available remedies. If the low-income spouse falsely claims the housing accommodation as their primary residence, or alternatively, the high-income spouse is living in the housing accommodation without claiming it as their primary residence, the owner may commence a court proceeding to determine residency status (see e.g. Ascot Realty LLC v Richstone, 10 AD3d 513, 513 [2004]; 318 E. 93 v Ward, 276 AD2d 277, 277 [2000]; Matter of Stahl Assoc. Co. v State Div. of Hous. & Community Renewal, Off. of Rent Admin., 148 AD2d 258, 262 [1989]; Chusid v Wright, 138 AD2d 291 [1st Dept 1988]). This can result in deregulation and/or the owner recovering possession of the housing accommodation, in addition to monetary and criminal consequences for any fraudulent acts (see RCL §§ 26-403.1, 26-412 [e]; 26-413 [a]; Matter of Stahl Assoc. Co. v State Div. of Hous. & Community Renewal, Off. of Rent Admin., 148 AD2d at 268; Chusid v Wright, 138 AD2d at 292). It would be neither fair nor equitable to misconstrue the statute to prevent a narrow set of circumstances that has adequate deterrents.
Finally, to the extent petitioner and the dissent contend that DHCR was prohibited from requiring tenant to provide confidential tax documents, we need not reach the issue in the instant matter as tenant voluntarily provided said documents.
The order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.

Garcia, J. (dissenting). The Rent Regulation Reform Act (RRRA) of 1993 provides for deregulation of luxury apartments otherwise subject to New York City's Rent Control Law. Relief{**31 NY3d at 688} under this "high income rent deregulation" statute is, as might be expected, based on "annual income" (Rent Control Law [Administrative Code of City of NY] § 26-403.1 [a] [1]). The first sentence of the statute defines the term: "[f]or purposes of this section, annual income shall mean the federal adjusted gross income as reported on the New York state income tax return" (id. [emphasis added]). "Total annual income" is then defined as "the sum of the annual incomes of all persons who occupy the housing accommodation as their primary residence" (id. [emphasis added]). Rather than use the definition of "annual income" provided in the first sentence of the statute, the majority upholds respondent New York State Division of Housing and Community Renewal's (DHCR) "determination" that "total annual income" means that portion of annual income the agency attributed to the person occupying the rent-controlled apartment (see majority op at 
683). That is not what the law says. Accordingly, I dissent.
I.
In 1993, the New York State Legislature "found that the current system of rent regulation was not equitable to either tenants or owners because the system in place disproportionately benefitted 'high income tenants' whose rent should not be subsidized" (Roberts v Tishman Speyer Props., L.P., 62 AD3d 71, 77 [1st Dept 2009]). The legislature therefore enacted the RRRA, which provided for the deregulation of certain high-rent or luxury apartments (see L 1993, ch 253, § 6).
As amended by the RRRA, the New York City Rent Stabilization Law and the Rent Control Law promulgate two procedures for luxury deregulation. The first procedure—not at issue here—allows for deregulation where "the tenant vacates the apartment and the legal rent, plus vacancy increase allowances and increases permitted for landlord improvements, is $2,000 or more" (Roberts, 62 AD3d at 78; see Rent Stabilization Law [Administrative Code of City of NY] § 26-504.2 [a]; Altman v 285 W. Fourth LLC, 31 NY3d 178 [2018]). The second procedure allows for deregulation if the monthly rent exceeds $2,000 and the total annual income of the occupants of the housing accommodation exceeds $175,000 in each of the two years immediately preceding the year in which the landlord files a petition seeking deregulation (see Rent Control Law{**31 NY3d at 689} § 26-403.1 [a]-[b]).[FN1] The law defines the key term "annual income" as set out above.
The owner of the apartment building may serve the tenant with an income certification form on which the tenant must "certify whether the total annual income is in excess of the deregulation income threshold in each of the two [*4]preceding calendar years" (id. § 26-403.1 [b]). If the tenant either fails to return the completed certification or certifies that his or her income was below the statutory threshold, the owner may contest that certification and ask DHCR to verify the tenant's income. DHCR then sends the names of the persons listed on the income certification form to the Department of Taxation and Finance (DTF) to verify the household's total annual income as reported on the relevant tax forms. To protect the privacy rights of tenants, DTF is only authorized to determine whether the income falls within the statutory threshold (see id. § 26-403.1 [c] [1]; Tax Law § 171-b [3] [b]).
Pursuant to this procedure, in April 2006, petitioner Brookford, LLC sought to deregulate respondent Margaret Friedman's rent-controlled apartment on Central Park West. Respondent DHCR denied the application, however, after allowing respondent Friedman to apportion her and her husband's annual income listed on their joint tax returns in 2004 and 2005. DHCR permitted the apportionment on the theory that respondent's husband no longer occupied the apartment after he moved to an assisted-living facility in March 2005. Although the couple's total annual income exceeded the statutory threshold of $175,000, the percentage of the income the agency attributed to respondent fell below that threshold. The majority finds this approach "rational" (majority op at 
683).
II.
The majority asserts that "[w]here the rationality of an agency's determination is based on the interpretation of a statute, this Court must consider the language of the statute as well as the legislative intent" (majority op at 
684-685). But our obligation is not to "consider" the statutory language as a factor in assessing "rationality," but to determine whether respondent's apportionment is consistent with the plain language and{**31 NY3d at 690} legislative intent of the Rent Control Law (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009]; Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303, 312 [2005]). An agency determination that "runs counter to the clear wording of a statutory provision . . . should not be accorded any weight" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). We cannot in any way delegate our responsibility for legal interpretation to the administrative agency charged with the statute's enforcement (see Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173 [1988]). If the agency's interpretation is inconsistent with the statute, as it is here, it cannot stand.
"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006] [internal quotation marks omitted]). We start with the text because it "is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (id.; see McKinney's Cons Laws of NY, Book 1, Statutes § 94). Under the Rent Control Law, "annual income" is defined as "the federal adjusted gross income as reported on the New York state income tax return" (§ 26-403.1 [a] [1] [emphasis added]). There is no ambiguity; the term means a number on a line on a specific tax form. Our analysis could end here. However, "the legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear' " (Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124).
The purpose of the luxury deregulation scheme is to create a mechanism for the "decontrol of high rent apartments occupied by high income households" (Senate Introducer's Mem in Support, Bill Jacket, L 1993, ch 253 at 8). In enacting the RRRA, the legislature found that the system in place disproportionately benefitted high-income tenants to the detriment of those who needed rent regulation the most. The full text containing the language cited by the majority (majority op at 
685) makes that clear:
"A sound housing policy should be equitable to both tenants and owners. The current system is neither. This bill is a first attempt to restore some rationality{**31 NY3d at 691} to the system. The current rent regulation system provides the bulk of its benefits to high income tenants. There is no reason why public and private resources should be expended to subsidize rents for these households" (Senate Introducer's Mem in Support, Bill Jacket, L 1993, ch 253 at 10 [emphasis added]).
Luxury deregulation was intended to rectify the "glaring inequity" of taxpayer dollars being used to subsidize the rents for the wealthy New Yorkers (id. at 11). In order to promote compliance, the legislation "provide[s] for a simple and straight forward income verification process" (id.).
[*5]The majority concludes that to give the statutory language its plain meaning would effectively nullify the primary residency requirement, allowing the annual income of "those persons who do not occupy the housing accommodation as their primary residence" to be counted towards the threshold (majority op at 
685-686). There is no "nullification" (id. at 686). The legislature defined the term "annual income" before using it in the next sentence of the statute. "Annual income" is counted only for those using the apartment as a primary residence; that term, for any occupant (or occupants), is defined as the federal adjusted gross income as reported on that person's state income tax return—regardless of filing status. Here, respondent and her husband's joint income, as reported, was well above the threshold. Absent some showing that DTF made an error, respondent was bound by the federal adjusted gross income listed on her joint return even though her husband no longer permanently lived at the apartment (see Matter of Classic Realty v New York State Div. of Hous. & Community Renewal, 2 NY3d 142, 146 [2004]).
One gets the sense that the majority is straining to reach what it considers a "fair" result in this case. But the majority's resolution undermines the deregulation scheme by allowing high-income tenants to manipulate the verification process, decreasing their stated income below the statutory threshold (see McKinney's Cons Laws of NY, Book 1, Statutes § 96 ["A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute"]). Precisely because wealthy couples can afford multiple residences or "households," they can now apportion their income between these households to keep their{**31 NY3d at 692} luxury apartment in the City rent-stabilized. Consider the scenario of a generously compensated law-firm partner whose primary residence is in New Jersey. But the partner's spouse, whose income is well below the statutory threshold, primarily resides in a rent-controlled apartment on Manhattan's west side. Each year during tax season, the couple files jointly and their federal adjusted gross income, as reported on their state tax return, is in the millions of dollars. How is it even remotely rational, let alone fair, to allow the spouse to apportion his or her income on the verification form? To avoid this result, and in keeping with legislative intent, the only income figure that can be dispositive, or "outcome determinative" as the majority puts it (majority op at 
685), is the federal adjusted gross income as reported on the state return. The concern is not fraud in the current rent regulation scheme (see majority op at 
687), it is that the majority's decision makes all this perfectly acceptable as a matter of law.
III.
Petitioner also correctly points out that DHCR's use of anything other than the federal adjusted gross income reported on the state income tax return would be impermissible because the agency is not entitled to look at extrinsic, confidential tax information. In creating the deregulation procedure, the legislature desired a "simple and straight forward income verification process" that "places minimal burdens on the tenants and DHCR" (Senate Introducer's Mem in Support, Bill Jacket, L 1993, ch 253 at 11). To that end, New York State Tax Law limits the information that can be used to verify a tenant's income:
"[DTF] . . . shall verify the total annual income of all persons residing in housing accommodations as their primary residence subject to rent regulation and shall notify the commissioner of [DHCR] as may be appropriate whether the total annual income exceeds the applicable deregulation income threshold in each of the two preceding calendar years. No other information regarding the annual income of such persons shall be provided" (Tax Law § 171-b [3] [b] [emphasis added]).
The verification process is "limited to agreement or disagreement with the material representations contained in such information{**31 NY3d at 693} and a statement of whether each such representation has been overstated or understated" (id. § 171-b [2]). Corresponding regulations restrict the information DHCR and DTF may use to "the first page of the New York State income tax returns for the applicable years for each tenant or occupant whose income is to be included in the total annual income," but from which the tenant must "delete all social security numbers and income figures" (9 NYCRR 2211.4 [b] [1]-[2]). Clearly, then, the statutory scheme "prohibit[s] disclosure of any income other than the [f]ederal adjusted gross income of an occupant of an apartment, as reported on the New York State income tax return, in determining whether the housing accommodation qualifies for [*6]deregulation" (Matter of Nestor v New York State Div. of Hous. & Community Renewal, 257 AD2d 395, 396 [1st Dept 1999]; see also Matter of Giffuni Bros. v New York State Div. of Hous. & Community Renewal, 293 AD2d 402, 403 [1st Dept 2002]).
DHCR's inability to use anything other than the federal adjusted gross income reported on the state tax return is confirmed by settled precedent. In Matter of Classic Realty v New York State Div. of Hous. & Community Renewal, DTF initially verified that the tenant's income exceeded the deregulation threshold (2 NY3d 142 [2004]). When DHCR reported that determination to the tenant, she amended her tax returns so that her federal adjusted gross income fell below the statutory threshold. Based on the amended returns, DHCR changed course and denied the petition for deregulation. On appeal, we annulled DHCR's denial of deregulation, holding that "DHCR's ruling cannot stand as it invites abuse of the luxury decontrol procedures which contemplate a single verification, the result of which is binding on all parties unless it can be shown that DTF made an error. No such showing is present here, and deregulation is therefore required" (id. at 146 [emphasis added]). Although we acknowledged that there may be a "legitimate reason" to amend a tax return, we nonetheless declined to allow the modification because it could "permit a tenant seeking to avoid deregulation to manipulate the timing and filing of tax returns or shift income to earlier years not under consideration" (id. at 147). Accordingly, Classic Realty suggests that anything beyond the single verification process prescribed by the statute would be "both arbitrary and capricious and affected by an error of law" (id.).
In this case, respondent and her husband voluntarily elected to file jointly with all the corresponding benefits that accrue to{**31 NY3d at 694} joint filers. Their reported federal adjusted gross income as listed on their state tax returns exceeded the deregulation threshold of $175,000 for the years at issue.[FN2] Instead of using this figure, DHCR allowed respondent to apportion her income, but had no way to verify that self-reported percentage. As a result, DHCR requested that she provide additional tax information—including various sources of income—to verify the percentage of income attributable to her. DHCR's request for additional tax information is not expressly authorized by the statutory scheme and, if anything, runs contrary to its clear mandate that "[n]o other information regarding the annual income of such persons shall be provided" (Tax Law § 171-b [3] [b]). It is a fundamental principle of administrative law that "an agency's authority must coincide with its enabling statute" (Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation, 75 NY2d 88, 92 [1989]), and an agency "[has] no authority to create a rule out of harmony with the statute" (Matter of Jones v Berman, 37 NY2d 42, 53 [1975]). DHCR possesses neither the technical expertise nor the legal authority to independently audit a tenant's income. Thus, DHCR has no authority to request additional tax information from a tenant beyond the "straightforward" verification process contemplated by the legislature. To the extent DHCR's internal memorandum of understanding with DTF suggests otherwise (see majority op at 
686), it conflicts with the text of the statute and, therefore, is invalid.
Contrary to the majority's claim (see majority op at 687), the above analysis is relevant for two reasons. First, to the extent DHCR is using a procedure prohibited under the statute, its actions, by definition, lack "rationality." Second, it is a clear indication of the legislative intent that a single income figure listed on a specific tax form—not some ad hoc apportionment process done by DHCR based on various tax and income data—be used for purposes of determining the annual income of any occupant.
IV.
Ultimately, in creating the luxury deregulation scheme, I do not believe the legislature ever intended to allow wealthy{**31 NY3d at 695} couples to apportion their joint income among multiple households. The majority's approach undermines the very purpose of luxury deregulation, which was intended to address the "glaring inequity" of taxpayer dollars being [*7]used to subsidize the rents of wealthy New Yorkers. The plain language of the statute was meant to prevent that result; we should adhere to it. Accordingly, I dissent.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Wilson concur; Judge Garcia dissents in an opinion.
Order affirmed, with costs, and certified question not answered as unnecessary.

Footnotes

Footnote 1:For proceedings commenced on or after July 1, 2011, total annual income must exceed $200,000 (see RCL § 26-403.1 [a] [2]).

Footnote 2:It bears noting that the IRS recognizes that joint liability may be severed in cases where an individual is no longer a member of the same household as the individual with whom the joint return was filed (see 26 USC § 6015 [c] [3] [A] [i] [II]).

Footnote 1:For proceedings commenced after July 1, 2011, the second procedure allows for deregulation if the monthly rent exceeds $2,500 and the total annual income of the occupants exceeds $200,000 in each of the two immediately preceding years (see Rent Control Law § 26-403.1 [a]-[b]).

Footnote 2:The term "annual income" is specifically defined and there is no need to look at the implications of "federal income tax liability" (majority op at 
685). Whatever the tax policy for considering joint income, the legislature elected, for good reason, to use a specific income figure on the state tax form.