Skrine v 505 Wash LLC (2025 NY Slip Op 51903(U))

[*1]

Skrine v 505 Wash LLC

2025 NY Slip Op 51903(U)

Decided on December 3, 2025

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 3, 2025
Civil Court of the City of New York, New York County

Rodney Skrine, Petitioner,

against
505 Wash LLC, et al., Respondents.

Index No. 1860/2025

For Petitioner: pro se (Rodney Skrine)
For Respondent: Paul Kenney

Jack Stoller, J.

Rodney Skrine, the petitioner in this proceeding ("Petitioner"), commenced this proceeding against 505 Wash LLC, Ram Chadha, Mary Chadha, and Vinod Chadha ("Respondents"), seeking possession of 505 West 181st Street, Apt. 305, New York, New York ("the subject premises") on the allegation of an illegal lockout. Respondent interposed an answer asserting, inter alia, that Petitioner has not lived in the subject premises for thirty days. The Court held a trial of this matter on December 1, 2025.
The trial record
The parties stipulated that Respondents used self-help to remove Petitioner from the subject premises.
Petitioner testified that he started living at the building in which the subject premises is located ("the building") in April of 2024 in Room 505 thereof ("the first room"); that he went to the subject premises in November of 2025; that electronic key for the door at the first room was not working; that he never moved out of the first room; that the building is a hotel that has nine floors; that there is a microwave in the subject premises with big bags of clothes and sneakers; that he was there; that they threatened to throw his stuff out; and that he paid in cash.
Petitioner submitted into evidence text exchanges between him and Ram Chadha ("Respondent"). One, from Respondent, said "Find a new place to stay. I will help you find another place but [you are] not allowed to be here any longer" and "Your stuff has been removed [your] room is located ." Petitioner submitted into evidence cards that Respondent used to memorialize when guests checked in and out of the building. One card states that Petitioner checked into the subject premises on September 27, 2025 and checked out on October 05, 2025. One states that Petitioner checked into the first room on October 8, 2025 and checked out on October 28, 2025. One states that Petitioner checked into the subject premises on October 30, 2025 and checked out on November 19, 2025.
Petitioner testified on cross-examination that he last paid on November 22, 2025 and that he was behind a day.
Aisha Philips ("Petitioner's girlfriend") testified that she lived in the Bronx; that she is Petitioner's girlfriend; that she works for the social services agency Homebase, across the street from the building; that she has known Petitioner since about February of 2025; that Petitioner first lived in the first room; that Petitioner relocated to the subject premises on November 2, 2025; that she spent the night two or three nights a week with Petitioner at his home, but otherwise was at his home every day; that the subject premises had a master bedroom with a bathroom; that Petitioner had a microwave; that she saw that Petitioner had bags of clothes, sneakers, and totes; that Petitioner had food in the refrigerator; that Petitioner had a coin thing there; that she helped Petitioner move from the first room to the subject premises; that she packed stuff up; that the she took it down to the subject premises; and that it took an hour to pack.
Respondent testified that he is the manager of the building; that his father is the owner; that the building is a hotel; that there are 52 rooms; that he manages violations on the property; that he is very involved with his management; that he knows Petitioner; that he spoke with Petitioner; that he has known Petitioner for some time and had some issues with them; that the process for registration for rooms is that guests present an identification card; that people come in and check in and pay their rate and they sign and then they go up to their room; that if people book on line, they pay that way; that Respondents get rid of registration cards every quarter; that the cards show the identification card on the back; that Petitioner had not been paying; that he gives rooms for short stays, sometimes hourly; that people pay cash; that he understood that he has a right to remove people when they do not pay; that since Petitioner had not been in the subject premises for the requisite amount of time he felt that he could exercise self-help; and that Petitioner threatened him.
Respondent testified on cross-examination that he had someone remove Petitioner's personal property from the subject premises; that Petitioner did not have to initial a card every time that he paid; and that he offered to put Petitioner at another hotel Respondent is involved with called "Maya".
Sukh Sharma ("the Manager") testified that he works at the front desk of the building; that he knows Petitioner; that Petitioner stayed at the hotel week to week and checked out; that the last time Petitioner was in the first room and then Petitioner was in the subject premises after that; that the longest period of time that Petitioner would stay was between 19 to 21 days; that there was a policy that Respondents could not let someone stay for longer than 21 days; that Petitioner would not pay for two or three or four days, and then Petitioner would pay those days all at once; and that Petitioner paid cash.
The Manager testified on cross-examination that Respondents have a policy that it does not let guests stay for longer than 21 days; that because of that policy, Respondents would have Petitioner check out and then check back in again; and that Petitioner had otherwise been checking into the subject premises since the summer of 2025.
Petitioner submitted into evidence photographs of his personal property in the lobby, which depict several bags of personal property.
Discussion
As Respondents used self-help to remove Petitioner from possession of the subject [*2]premises, one of the two elements that Petitioner would need to prove has been established. The other element is whether Petitioner was in possession, RPAPL §713(10) or, to put it another way, whether Petitioner was a "lawful occupant". Linder v. Lafayette Morrison HDFC, 87 Misc 3d 26(A)(App. Term 1st Dept. 2025), Rodriguez v. HUB BK, LLC, 2025 NY Slip Op. 25167 (App. Term 2nd Dept.).
Under normal circumstances, a hotel need not invoke Court process to remove a transient occupant. Mann v. 125 E. 50th St. Corp., 124 Misc 2d 115 (Civ. Ct. NY Co. 1984), affirmed for the reasons stated, 126 Misc 2d 1016 (App. Term 1st Dept. 1985). However, a resident of a hotel who is not a transient occupant of "one or more rooms in a hotel who has been in possession for thirty consecutive days" is not subject to self-help. RPAPL §711. A resident of a hotel for three months with no other discernible address is not transient for these purposes and only subject to removal by Court process, even if the resident is in arrears. Mann, supra, 124 Misc 2d at 117. While the parties dispute how long Petitioner has been staying in the building, the Manager's testimony that Petitioner has been in the building since the summer of 2025 shows that Petitioner has at least been occupying the building for a comparable amount of time as the petitioner in Mann, supra.
Respondent argues that RPAPL §711 does not apply because Petitioner has not resided in the hotel for thirty consecutive days, relying in part on the registration cards in evidence and the Manager's testimony. Significantly, however, the Manager testified that Respondents had a policy of not letting guests stay for more than 21 days, the result being that Respondents would check guests out of rooms and then check them back in, raising the question about the effect of such reverse-engineering on Petitioner's rights.
Instructively, when a tenant relocated from a regulated apartment to an unregulated apartment at a landlord's behest, the regulatory status of the tenant attached to the tenant rather than the particular apartment. 91 Real Estate Assoc. LLC v. Eskin, 46 Misc 3d 40, 41 (App. Term 1st Dept. 2014), Saad v. Elmuza, 12 Misc 3d 57, 59 (App. Term 2nd Dept. 2006).[FN1]
The opposite rule would obviously incentivize owners to move tenants around in order to evade legal protections for tenants. This principle intuitively applies to measures taken to change the applicability of self-help to an occupant.
If Respondents truly wished to divest themselves of Petitioner's occupancy, they could have used self-help when he was actually transient, rather than derive whatever benefit they may have gained from Petitioner's occupancy and then serially checking him in and out. Just as an occupant cannot create a tenancy by gamesmanship, seduction, and artifice, Chusid v. Wright, 138 AD2d 291, 292 (1st Dept.), appeal dismissed, 72 NY2d 948 (1988), an owner may not similarly contrive a predicate upon which to use self-help.
Conclusion
Accordingly, it is ordered that the Court awards Petitioner a final judgment of possession. The Court directs Respondents to restore Petitioner to possession of the subject premises forthwith, meaning as soon as possible, using whatever method Respondents have for access to the subject premises. On default, Petitioner may move to hold Respondents in contempt of [*3]Court in Room 225 of the Courthouse located at 111 Centre Stret, New York, New York. This order is without prejudice to any other remedy or cause of action between the parties concerning possession of the subject premises, and to any defenses thereto.
This constitutes the decision and order of the Court.
Dated: December 3, 2025
New York, New York
HON. JACK STOLLER
J.H.C.

Footnotes

Footnote 1:The Court is not determining rent regulatory status in this case. Rather, cases analyzing rent regulatory status as such provide useful authority as to the status of an occupant for purposes of RPAPL §711. Fisher v. Burke, 72 Misc 3d 1223(A)(Civ. Ct. Kings Co. 2021).