Matter of Bifulco v City of New York

2026 NY Slip Op 02772

May 5, 2026

Appellate Division, First Department

Higgitt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Eda Bifulco et al., Petitioners-Appellants,

v

City of New York, et al., Respondents-Respondents.

Supreme Court, Appellate Division, First Judicial Department

Decided and Entered: May 05, 2026

Index No. 161841/23|Appeal No. 6253|Case No. 2024-05513|

Sallie Manzanet-Daniels

Manuel Mendez Bahaati E. Pitt-Burke John R. Higgitt Shlomo S. Hagler

Law Office of John A. Scola, PLLC, New York (John A. Scola of counsel), for appellants.

Muriel Goode-Trufant, Corporation Counsel, New York (Ian M. Sinclair, Deborah A. Brenner of counsel), for respondents.

Petitioners appeal from an order of the Supreme Court, New York County (Nicholas W. Moyne, J.), entered on or about November 19, 2024, which denied their petition to annul three separate determinations of respondent New York City Department of Citywide Administrative Services, each dated August 11, 2023, not to score petitioners' respective promotional civil service examinations, granted respondents' cross-motion to dismiss, and dismissed this proceeding brought pursuant to CPLR article 78.

Higgitt, J.

[*1]

Courts afford great deference to administrative determinations. But judicial review of an administrative determination is meaningful; we do not serve to rubberstamp challenged governmental actions. The administrative determinations before us, which are based on petitioners' purported violations of an ambiguous civil service test-taking rule, are irrational. Therefore, we grant the CPLR 7803(3) petition in part and remand the matter to Supreme Court for additional proceedings.

I.

Petitioners are sergeants in the New York City Police Department who sat in March 2023 for promotional examinations administered by respondent Department of Citywide Administrative Services (DCAS). Each petitioner subsequently received from DCAS a "notice of allegation of violation" claiming that the petitioner violated Civil Service Law § 50(11) and Regulations E. 15 and E. 16 of the General Examination Regulations (55 RCNY) § 11-01(0) (candidate who fails to follow instructions at test site will not have test scored) and (p)(1) (candidate who cheats on test will be barred from taking civil service examinations). Petitioners were accused of violating two testing rules: one prohibiting test takers from entering the test site with a cell phone, and another stipulating that, "[b]efore, during and after your test, you are not permitted to use, have turned on or have out in the open: cellular phones." These rules, which were communicated to candidates at the testing site but do not appear to be codified or cataloged, were designed to ensure that candidates did not disclose to others exam questions or answers.

The preliminary findings in each of the violation notices distilled the allegations to the following: that the petitioner had been instructed to remain in the testing room until approximately 3:00 p.m. for a unified dismissal; that after completing the examination before 3:00 p.m., the petitioner removed his or her cell phone from the clear ziplock bag in which he or she was required to stow the phone during the examination; and that the petitioner used the cell phone before the unified dismissal. The notices indicated that as a result of petitioners' alleged administrative infractions, their examination scores would be nullified, rendering them ineligible for promotion, and they would not be eligible to take any further civil service examinations for five years. The notices informed petitioners that they had an opportunity to contest the allegations and the proposed penalties within a certain time frame, and provided the name and address of the DCAS assistant commissioner to whom the protest must be sent.

Each petitioner responded to the notice, acknowledging having accessed and used a cell phone to check for communications from family members after completing the examination but before being allowed to leave the testing room.

[*2]

A DCAS assistant commissioner concluded that each petitioner violated the two testing rules, and therefore violated Rules 11-01(0) and (p)(1). The assistant commissioner concluded that petitioners' examinations would not be scored and that they were barred from taking civil service examinations for five years. Each petitioner received a letter from the assistant commissioner containing his determination; the letters closed with a notification that petitioners could appeal the determinations to an executive deputy commissioner by a specified date.

Each petitioner took an administrative appeal to the executive deputy commissioner. Petitioners provided non-test-related explanations for their use of their cell phones (e.g., checking in with family members). Moreover, their narratives suggested that around 2:41 p.m., all of the candidates had completed their examinations, that the proctors permitted the candidates to leave their seats and talk to each other, and that some of the other candidates accessed their cell phones.

DCAS's executive deputy commissioner rejected, in part, the administrative appeals, writing that, "[a]lthough there may be ambiguity around the conclusion of the test, which include statements from DCAS staff that the test had ended, you still did not comply with the prohibition against the use of a prohibited device before[,] during or after the exam event." The executive deputy commissioner did, however, reduce the penalties imposed on petitioners; while their examinations would not be scored, they were not barred from taking future civil service examinations. The executive deputy commissioner alerted petitioners that hers was the "Final Determination of DCAS," and no mention was made of any additional administrative appeal.

II.

Petitioners commenced a CPLR article 78 proceeding against respondents (DCAS and other municipal entities and municipal officers) challenging the executive deputy commissioner's determinations as arbitrary and capricious (see CPLR 7803[3]). With respect to the test-taking rule prohibiting candidates from entering the test site with a cell phone, petitioners noted the incongruity of the text of the rule with DCAS's practice of allowing cell phones in the test sites and requiring that they be stowed in ziplock bags. This incongruity caused any enforcement of this rule to be arbitrary and capricious.

Concerning the rule providing that, "[b]efore, during and after your test, you are not permitted to use, have turned on or have out in the open: cellular phones," petitioners maintained that the rule is ambiguous because it does not indicate when, postexamination, a candidate is permitted to resume cell phone use, and, therefore, a candidate could not know when the rule ceases to apply. Petitioners asserted that this ambiguity and the DCAS-acknowledged ambiguity as to when the examination concluded rendered the administrative determinations arbitrary and capricious.

[*3]

Petitioners sought a judgment vacating the administrative determinations, directing respondents to immediately score their examinations and place them on the relevant promotional list, and awarding petitioners certain ancillary relief such as damages and work-related benefits.FN1

Respondents moved to dismiss the petition, arguing that petitioners could have, but did not, seek further administrative review by the New York City Civil Service Commission (CSC), and they therefore failed to exhaust their administrative remedies before commencing their CPLR article 78 proceeding. On the merits, respondents argued that petitioners failed to demonstrate that the administrative determinations were arbitrary and capricious, and that the determinations were in fact rational. Respondents maintained that petitioners had ample notice of the test-taking rules and their acknowledgements that they used their cell phones at the test site were sufficient to support the administrative determinations.

III.

Supreme Court granted respondents' motion to dismiss, finding that the administrative determinations were not arbitrary and capricious. Judgment was subsequently entered denying the petition and dismissing the proceeding.

IV.

On appeal, petitioners argue that the exhaustion-of-remedies doctrine does not bar this CPLR article 78 proceeding because DCAS did not advise them of the right to further administrative review, and, in any event, respondents did not establish that the determinations at issue were subject to further review by the CSC. Petitioners repeat the points they made before Supreme Court with respect to the merits of their arbitrary-and-capricious challenge. Essentially, petitioners maintain that they were irrationally penalized under ambiguous test-taking rules for a situation respondents created. Petitioners also argue that the nullification of their test scores is a penalty so disproportionate to the offenses as to shock the conscience.

Respondents make plain that they are defending only the determinations that petitioners violated the test-taking rule prohibiting the use of cell phones before, during, and after the test; respondents do not contend that the determinations that petitioners violated the test-taking rule prohibiting cell phones at the test site should be sustained.

[*4]

In defense of the determinations relating to the before-during-after rule, respondents maintain that petitioners failed to exhaust their administrative remedies by failing to seek review by the CSC. Respondents also maintain that the determinations are not arbitrary and capricious; rather, based on petitioners' admissions, the DCAS executive assistant commissioner rationally determined that petitioners violated the test-taking rule prohibiting the use of phones before, during, and after the exam. Regarding DCAS's acknowledgment that there was "ambiguity" concerning when the test concluded, respondents argue that "the timing of the exam is irrelevant" because "[t]he prohibition on using cell phones at the test site applied before, during, and after test concluded." Respondents note that petitioners' claim that the penalties shock the conscience was raised neither in the petition nor in opposition to respondents' motion to dismiss.

V.

1.

We begin with the exhaustion of administrative remedies issue. Generally,

"one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law. This doctrine furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency, preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a coordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its expertise and judgment" (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978] [internal citations and quotation marks omitted]).

Here, petitioners received from DCAS the notices claiming that they violated Civil Service Law § 50(11) and General Examination Regulations E. 15 and E. 16. In response to those notices, petitioners lodged timely responses to the allegations against them. After the DCAS assistant commissioner assigned to consider petitioners' responses rendered a determination that was adverse to them, petitioners took a timely administrative appeal to DCAS's executive deputy commissioner, whose determination, while more favorable to petitioners than that of the assistant commissioner, was still adverse to them. Notably, both the notices preferring the administrative charges against petitioners and the determinations of the assistant commissioner expressly notified petitioners of the administrative remedies available to them. This is in stark contrast to the executive deputy commissioner's determinations, which stated that they were

[*5]

"final" and did not suggest that any further administrative review was available.FN2 Thus, while petitioners may have had an additional administrative appeal to the CSC (see Matter of Raganella v New York City Civ. Serv. Commn., 66 AD3d 441, 446-447 [1st Dept 2009]), in light of the circumstances and recognizing that the exhaustion doctrine is not inflexible (see Watergate II Apts., 46 NY2d at 56), we conclude that petitioners' failure to seek additional administrative review by the CSC does not warrant dismissal of this CPLR article 78 proceeding (see Matter of Obas v Kiley, 149 AD2d 422, 423 [2d Dept 1989]; cf. Matter of Urciuoli v Department of Citywide Admin. Servs., 75 AD3d 427, 428 [1st Dept 2010]).

2.

Where, as here, a party challenges an administrative determination made in the absence of a hearing required by law (compare CPLR 7803[3] with [4]), "we must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal, 31 NY3d 679, 684 [2018] [internal quotation marks omitted]; see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]). Most CPLR 7803(3) proceedings are founded on an objection to the quality, quantity, or both, of the evidence supporting an administrative determination. And most of those challenges are unsuccessful because, "[u]pon concluding that an authorized agency has reviewed a matter applying the proper legal standard and that its determination has a rational basis, a court cannot second guess that determination" (Matter of W. 58th Street Coalition, Inc. v City of New York, 37 NY3d 949, 952 [2021]). The ultimate touchstone, though, of an administrative determination subject to CPLR 7803(3) review is rationality (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of the Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; see also Matter of Nehorayoff v Mills, 95 NY2d 671, 675 [2001]).

Here, rationality is lacking, not for a want of evidence, but because the standard to which DCAS held petitioners was ambiguous. The notices of violations issued by DCAS specified, among other things, that petitioners breached a test-taking rule providing that, "[b]efore, during and after your test, you are not permitted to use, have turned on or have out in the open: cellular phones." The rule does not indicate when the cell-phone prohibition begins or when it ends.FN3 Nothing in the rule, which DCAS quoted from the instruction sheet provided to the candidates, suggests the location or locations to which the cell phone prohibition applied. The ambiguity of the rule, coupled with the ambiguity as to when the test concluded (which the executive deputy commissioner acknowledged) and the prevalence of cell phones in the exam room, make the determinations irrational.

[*6]

The principle that courts must give deference to an agency's interpretation of its own rules and regulations does not salvage DCAS's determinations (see Matter of City of New York v New York State Nurses Assn., 130 AD3d 28, 34 [1st Dept 2015], affd 29 NY3d 546 [2017]; Matter of Licari v New York City Employees' Retirement Sys., 245 AD2d 159, 160 [1st Dept 1997]; Matter of Tommy & Tina, Inc. v Department of Consumer Affairs of City of N.Y., 95 AD2d 724, 724 [1st Dept 1983], affd 62 NY2d 671 [1984]). Respondents have not provided a consistent interpretation of the before-during-after rule; rather, they have offered varying interpretations of it. Both in the administrative proceedings and in their brief, respondents suggest alternatively that the rule applied "at the test site," "in the Testing Center" and "in the exam room," and at some points respondents describe the rule without reference to any particular location.FN4 Therefore, DCAS's "interpretation" of the rule is irrational. DCAS, in the exercise of its special expertise, could have imposed a broad ban on cell phones in the exam room or the test site, but it needed to do so clearly.

Maintaining examination integrity is an important administrative goal; indeed, examination integrity is a pillar of the merit-based civil service system mandated by the New York State Constitution (see Matter of Mena v D'Ambrose, 44 NY2d 428, 434 [1978]). That integrity is achieved through clear test-taking rules with which reasonable candidates can measurably comply. Examination integrity is not fostered by ambiguous rules that leave candidates guessing as to the conduct expected of them, and reviewing courts straining to ascertain whether an administrative determination founded on an ambiguous rule is rational.

VI.

In light of our conclusion that DCAS's determinations were irrational and because the facts relating to the content and meaning of the before-during-after rule have been fully presented, we grant those aspects of the petition seeking vacatur of the determinations, and remand the matter to Supreme Court to permit respondents to interpose an answer with respect to petitioners' various demands for relief (see CPLR 7804[f]; see also Matter of Kickertz v New York Univ., 25 NY3d 942, 944 [2015]) and for further proceedings.

[*7]

Accordingly, the order of the Supreme Court, New York County (Nicholas W. Moyne, J.), entered on or about November 19, 2024, which denied the petition to annul three separate determinations of respondent New York City Department of Citywide Administrative Services, each dated August 11, 2023, not to score petitioners' respective promotional civil service examinations, and granted respondents' cross-motion to dismiss, and dismissed this proceeding brought pursuant to CPLR article 78, should be reversed, on the law, without costs, the proceeding reinstated, the cross-motion denied, the aspects of the petition seeking to vacate the determinations granted, and the matter remanded to Supreme Court for further proceedings consistent herewith.

Order, Supreme Court, New York County (Nicholas W. Moyne, J.), entered on or about November 19, 2024, reversed, on the law, without costs, the petition reinstated, the cross-motion denied, the aspects of the petition seeking to vacate the determinations granted, and the matter remanded to Supreme Court for further proceedings consistent herewith.

Opinion by Higgitt, J. All concur.

Manzanet-Daniels, J.P., Mendez, Pitt-Burke, Higgitt, Hagler, JJ.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 5, 2026

Footnotes

Footnote 1

The petition was supported by the various relevant notices, letters and determinations of DCAS, and petitioners' responses thereto.

Footnote 2

Finality and exhaustion of administrative remedies are, of course, conceptually distinct, with the former demanding a definitive position by the administrative agency on a controversy that inflicts an actual injury and the latter generally requiring an injured party to exploit available administrative processes to eliminate or ameliorate the injury (Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194-195 [2007]).

Footnote 3

Read literally, a candidate could never use a cell phone, anywhere or any time.

Footnote 4

Given that the test-taking rule was provided to the candidates at the test site and is not codified or cataloged, we cannot verify the rule's precise text.