# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 7
In the Matter of Pedro
Endara-Caicedo,
          Appellant,
       v.
New York State Department of
Motor Vehicles, et al.,
          Respondents.

V. Marika Meis, for appellant.
Philip J. Levitz, for respondents.
New York State Association of Criminal Defense Lawyers et al., amici curiae.

DiFIORE, Chief Judge:

The primary question presented by this appeal is whether the two-hour rule in

Vehicle and Traffic Law § 1194 (2) (a) (1), authorizing a chemical test to be taken from a

motorist based upon deemed consent, is applicable to a Department of Motor Vehicles

- 1 -

(DMV) license revocation hearing held pursuant to Vehicle and Traffic Law § 1194 (2) (c) after a motorist's refusal to submit to a chemical test. Because the plain text of Vehicle and Traffic Law § 1194 (2) (c) specifically limits the subject matter of the revocation hearing to four enumerated issues and the evidentiary two-hour limit for a deemed consent scenario is not one of those issues, we hold that the two-hour rule is not applicable to a DMV revocation hearing.

In 2016, petitioner was arrested for driving while intoxicated in violation of Vehicle and Traffic Law § 1192. Approximately three hours after his lawful arrest, petitioner was duly warned of the revocation consequences of a refusal to submit to a chemical test and refused the test. An administrative license revocation hearing was held. By statute, the issues at a DMV license revocation hearing "shall be limited to the following": (1) whether the police had reasonable grounds to believe the motorist was driving in violation of Vehicle and Traffic Law § 1192; (2) whether the arrest was lawful; (3) whether the motorist was sufficiently warned, prior to the refusal, in clear and unequivocal language, that a refusal to submit to the chemical test referenced in Vehicle and Traffic Law § 1194 (2) (a) (1) would result in the immediate suspension and subsequent revocation of his or her driver's license, independent of whether the motorist is found guilty of the charge for which he or she was arrested; and (4) whether the motorist refused "to submit to such chemical test or any portion thereof" (Vehicle and Traffic Law § 1194 [2] [c]).

The Administrative Law Judge, upon proof establishing the four statutorily required issues, revoked petitioner's driver's license based on his refusal to submit to the chemical

test and the determination was affirmed on appeal by the DMV Appeals Board.  Petitioner

commenced this CPLR article 78 proceeding seeking to annul the DMV's determination.

Supreme Court denied the petition and dismissed the proceeding.  The Appellate Division

affirmed, holding that a motorist's refusal to submit to the chemical test can be used against

the motorist in an administrative license revocation hearing, even if the refusal occurred

more than two hours after the arrest (180 AD3d 499 [1st Dept 2020]).  This Court granted

petitioner's motion for leave to appeal (35 NY3d 1078 [2020]) and we now affirm.

Vehicle and Traffic Law § 1194 sets forth the procedures for the arrest and testing

of intoxicated drivers.[1]  Vehicle and Traffic Law § 1194 (2) (a) currently provides that a

motorist operating a vehicle in New York "shall be deemed to have given consent to a

chemical test," given by or at the direction of a police officer, for the purpose of

determining the alcohol content of the motorist's blood.  The statute places additional

limitations on the deemed consent provision, requiring both that the officer must have

reasonable grounds to believe the motorist was operating the vehicle in violation of Vehicle

and Traffic Law § 1192 and that the test must be administered "within two hours after such

person has been placed under arrest for any such violation"—the two-hour rule (Vehicle

and Traffic Law § 1194 [2] [a] [1]).  The statute makes clear that, if a motorist refuses to

submit to the test, the penalty is mandatory license revocation, the procedure for which is

---

[1] Vehicle and Traffic Law § 1194 (1) (b) addresses a compulsory breath test administered in the "field" and is not at issue here.  Subdivision (3) of section 1194 sets forth the requirements for a court-ordered chemical test upon a motorist's refusal, but is only authorized in the event of a death or serious physical injury of a person other than the operator of the vehicle.

set forth in Vehicle and Traffic Law § 1194 (2) (c).  Petitioner argues that the two-hour rule should be imported into the administrative hearing requirements of section 1194 (2) (c)—that, before a motorist's license may be revoked, an administrative law judge must find that the motorist's refusal to submit to the chemical test occurred within two hours of arrest.  The language of Vehicle and Traffic Law § 1194 (2) (c), however, setting forth the four limited issues to be considered at the administrative revocation hearing, is clear and unambiguous and contains no requirement that, to warrant license revocation, there must be a finding that a motorist's refusal to submit to a chemical test occurred within two hours of the arrest.

The statutory framework addressing compulsory chemical tests for intoxicated drivers has been carefully crafted over decades by the legislature, with the balance in favor of facilitating the taking of the tests and removing drunk drivers from the road.  Based on the evolution of the provisions at issue here—the two-hour evidentiary rule in subsection (2) (a) (1), the deemed consent provision of section 1194 (2) (a), and the administrative hearing revocation provision of section 1194 (2) (c)—any conclusion that a motorist, upon being arrested for violating Vehicle and Traffic Law § 1192, may refuse a chemical test without consequence, is defeated by the statutory text and the undeniable, persistent efforts of the legislature to deter motorists from refusing chemical tests in drunk driving cases. Indeed, the mandatory administrative revocation hearing for a motorist's refusal to submit to a chemical test evolved independently and subsequently to the two-hour evidentiary rule relating to the admissibility of blood alcohol content (BAC) for criminal prosecutions of

driving while intoxicated (DWI) committed in violation of Vehicle and Traffic Law § 1192. The different paths of the statutory provisions at issue illustrate the different purposes those provisions serve.

The two-hour rule dates back to 1941, when trial courts were first authorized to admit BAC evidence "taken within two hours of the time of the arrest" of an intoxicated driver "[u]pon the trial of any action or proceeding arising" therefrom (L 1941, ch 726, § 1 [then-Vehicle and Traffic Law § 70 (5)]). As part of the statute defining the crime of driving while intoxicated, the provision was intended to eliminate guesswork as to the intoxicated condition of the driver, resulting in a higher percentage of convictions and exonerations of unintoxicated drivers (*see* Report of the Committee to Study Problems of Motor Vehicle Accidents, American Medical Association, May 1939, Bill Jacket, L 1941, ch 726).[2]

In the absence of a statutory provision authorizing the procedure for the police to obtain a chemical test, in 1953, the legislature enacted a separate provision, Vehicle and Traffic Law § 71-a, the precursor to the current deemed consent provision, under which a motorist was deemed to consent to a chemical test "administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition." In the event a motorist refused to submit to "such chemical test," the provision

---

[2] Section 70 included three BAC measurements in the context of what constitutes prima facie evidence of intoxication. With the advent of the per se crime of DWI for a motorist with a BAC of .08% (Vehicle and Traffic Law § 1192 [2]), the measurements associated with the two-hour rule were repealed and replaced in Vehicle and Traffic Law § 1195 with more accurate scientific measurements of intoxication.

required that the commissioner "shall revoke his license" (L 1953, ch 854). At that time, evidence of a refusal to take the test, as opposed to the results of the test itself, was not admissible (*see* Sponsor's Mem, Bill Jacket, L 1973, ch 351), and there was no two-hour limitation in the deemed consent provision. Due process concerns with respect to the chemical test procedure and the revocation provision (*see Matter of Schutt v Macduff*, 205 Misc 43 [Sup Ct, Orange County 1954]) led to the statute's amendment the following year to require an administrative hearing prior to license revocation (L 1954, ch 320). A requirement that the motorist had to be under arrest was also added, as was the authority to temporarily suspend the motorist's license without notice on the basis of a sworn police report, pending the determination of the hearing (L 1954, ch 320). The Vehicle and Traffic Law was recodified in 1959: section 70 (5) containing the two-hour evidentiary rule and the substantive crime of DWI became section 1192, and section 71-a, containing the deemed consent and mandatory revocation for refusal provisions, became section 1194 (L 1959, ch 775).

The prerequisite refusal warnings were added to section 1194 (1) in 1968 (L 1968, ch 85). The refusal warnings were intended to encourage more motorists to consent to the test and were applicable in the "completely separate" administrative proceeding context (*see* Mem of Commissioner of Motor Vehicles, Bill Jacket, L 1968, ch 85). In 1970, the legislature again recodified the intoxicated driving laws, removing the two-hour evidentiary rule from the offense of DWI (Vehicle and Traffic Law § 1192) and adding it to the deemed consent provision (Vehicle and Traffic Law § 1194 [1]) in a long,

unenumerated paragraph that also included the mandatory revocation language (L 1970, ch 275). The following year, the mandatory revocation procedures were removed from subdivision one and placed in separate subdivisions—Vehicle and Traffic Law § 1194 (2), (3), (4) (L 1971, ch 445). The admissibility of chemical test refusal evidence, in Vehicle and Traffic Law § 1194 (2), was authorized in 1973 (L 1973, ch 351).

In 1980, there was a restructuring of the revocation provisions in section 1194. The 1980 legislation provided for an immediate suspension of a motorist's license upon refusal of a chemical test by the court in the pending criminal action and established the current procedure for the subsequent administrative hearing—including that the scope of "[t]he hearing shall be limited to" four criteria that must be proved at the revocation hearing (L 1980, ch 807).[3] The purpose of the 1980 amendments, including the limitation on the scope of the administrative hearing, was to "provide[] the mechanism for taking quick action" and facilitate "quicker resolution of [DWI] charges" (Letter from DMV, June 18, 1980 at 2, Bill Jacket, L 1980, ch 807, at 15). The legislature also clarified that the administrative license revocation applies upon refusal, independent of whether the motorist is ultimately convicted of the intoxicated driving offense for which he or she was arrested (L 1981, ch 347). Never, in any of the many changes to Vehicle and Traffic Law § 1194 during the 1980s, was the two-hour rule imported into the license revocation provisions. Given this history, the legislature's failure to assign any significance to the timing of a motorist's

---

[3] This provision, section 1194 (3) (a), was renumbered to section 1194 (2) (c) when the Vehicle and Traffic Law was again recodified in 1988 (L 1988, ch 47).

refusal to submit to a chemical test in Vehicle and Traffic Law § 1194 (2) (c), which specifically identifies the only issues to be addressed at a revocation proceeding, "compellingly suggests" that the omission was purposeful (*see People v Finnegan*, 85 NY2d 53, 58 [1995]).

To be sure, the evolution of the two-hour rule demonstrates that it was a specific limitation concerned with the probative nature of BAC evidence obtained from a chemical test for use in a criminal prosecution for a violation of Vehicle and Traffic Law § 1192. As we noted in *Matter of Viger v Passidomo* (65 NY2d 705, 707 [1985]), "[t]he two-hour time period . . . is an evidentiary rule"—it does not grant a defendant substantive rights with regard to the taking or refusal of a chemical test. To that end, the applicability of the probative nature of the two-hour rule has been limited to the confines of deemed consent and has not been applied to the admissibility of the results of chemical tests obtained by section 1194 (3) court order (*see People v McGrath*, 73 NY2d 826 [1988], *affd on op below* 135 AD2d 60 [2d Dept 1988]), upon a defendant's voluntary consent to take the test more than two hours after arrest (*see People v Atkins*, 85 NY2d 1007, 1009 [1995]; *People v Smith*, 18 NY3d 544, 548 n 1 [2012]; *cf. People v Odum*, 31 NY3d 344, 346 [2018]) or pursuant to a search warrant (*see People v Casadei*, 66 NY2d 846 [1985]).

Petitioner's reliance on the statutory interpretation analysis in *People v Odum* as support for a motorist's substantive right to refuse a chemical test without consequence is misplaced. *Odum* addressed the admissibility at trial of the results of a chemical test administered more than two hours after the defendant's arrest, and whether the refusal

warnings, including the inaccurate warning regarding the use of any refusal at a criminal trial, as given to him rendered his consent to the test involuntary. We emphasized that the 1973 statute authorizing the admissibility of evidence of a test refusal at a criminal trial was in derogation of common law and concluded as a result that the statutory provision authorizing such admission—Vehicle and Traffic Law § 1194 (2) (f)—had to be strictly construed to include the two-hour rule (*see* 31 NY3d at 353).[4] In stark contrast, the limitation on the scope of the revocation hearing in section 1194 (2) (c) is not in derogation of the common law and is a subsequently enacted provision that specifically governs the issues that may be considered at an administrative hearing *(see Matter of Perlbinder Holdings, LLC v Srinivasan*, 27 NY3d 1, 9 [2016], citing McKinney's Cons Laws of NY, Book 1, Statutes § 238 ["Under principles of statutory construction, whenever there is a general and a specific provision in the same statute, the general applies only where the particular enactment is inapplicable"]). The legislative decision in 1941 to create a two-hour evidentiary rule was rooted in the existing science surrounding how fast alcohol metabolized in the bloodstream and the probative value of that evidence after two hours had passed (*see* Assembly Sponsor's Mem in Support, Bill Jacket, L 1941, ch 726; *see also*

---

[4] Vehicle and Traffic Law § 1194 (2) (f) provides that "[e]vidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of [Vehicle and Traffic Law § 1192] but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal." When the substance of this evidentiary provision was added in 1973, the statute already included the two-hour rule for BAC evidence and, thus, as the DMV argues, the evidentiary provision in section 1194 (2) (f) could reasonably be read to incorporate the same two-hour rule.

*Atkins*, 85 NY2d at 1009-1010 [Simons, J. dissenting]).  The administrative penalty of a license revocation does not implicate these evidentiary concerns.

For the same reasons, *Odum*'s interpretation of the meaning of the phrase "such chemical test" from Vehicle and Traffic Law § 1194 (2) (f) and its relation to the deemed consent provision in section 1194 (2) (a) is not controlling.  As noted above, the evolution of the language of the provisions at issue here demonstrates that, unlike the use of the phrase in section 1194 (2) (f), the phrase "such chemical test" found in Vehicle and Traffic Law § 1194 (2) (c) was the original language used when the license revocation rule was first formulated in 1953, long predating the inclusion of the two-hour evidentiary rule in the deemed consent provision of Vehicle and Traffic Law § 1194 in 1970.  Moreover, to the extent there is any ambiguity created by the "such chemical test" language, the clear legislative intent to use the mandatory revocation penalty to induce motorists to peacefully submit to a chemical test to determine BAC counsels against petitioner's position.  As this Court recognized over 50 years ago, the statutory scheme "was designed to enable the authorities to deal promptly and effectively with the scourge of drunken drivers by immediate revocation of their licenses either upon chemical proof of intoxication or upon refusal to take the blood test" (*People v Craft*, 28 NY2d 274, 278 [1971]).  The legislature has continually strengthened drunk driving laws over the years with a very specific design to obtain chemical tests from motorists arrested for violating section 1192 in order to ease the difficulty of proving the BAC of an intoxicated driver (*see* Interim Rep of NY St Joint Legis Comm on Motor Veh Problems, 1953 NY Legis Doc No. at 12-13).  The legislative

history reflects a consistent intention "to strengthen our laws . . . and help prevent senseless and tragic deaths" caused by drivers under the influence of alcohol and drugs (Governor's Mem approving L 1980, ch 807, 1980 Legis Ann at 329).  Our statutory scheme, which provides the motorist, who upon arrest is deemed to consent to a chemical test, with procedural protections for an informed refusal on the penalty of a license revocation, does not bestow the substantive right to refuse the test outside the two-hour limit.  Rather, it protects the public from the "grisly toll" drunk drivers take on the roads (*see Birchfield v North Dakota,* 579 US 438 [2016]) and it is absolutely counter to these efforts to suggest that section 1194 (2) (c) grants a refusal right that is not in the text of the statute.

Finally, the argument that DMV's prior long-standing policy interpreting the two-hour rule as applicable to license revocation hearings should be controlling is without merit.  Determinatively, this Court is not required to defer to an agency's interpretation of plain statutory language and legislative intent (*see Matter of Belmonte v Snashall,* 2 NY3d 560 [2004]) and there is certainly no basis to defer to an interpretation that the agency reconsidered, in light of *People v Atkins*, and abandoned 10 years ago (*see* 2012 NY St Dept of Motor Vehicles Op No. 1-12).  For the reasons stated above, DMV's determination based on its interpretation of the statutes at issue was not irrational or affected by an error of law (*see Matter of Brookford, LLC v New York State Div. of Hous. & Community Renewal*, 31 NY3d 679, 684-685 [2018]; CPLR 7803 [3]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting):

The narrow issue presented on this appeal is whether, under Vehicle and Traffic Law (VTL) § 1194 (2) (a), evidence of a motorist's refusal to voluntarily submit to a blood alcohol chemical test is admissible in a license revocation administrative hearing,

notwithstanding that the request to submit to such a test was made more than two hours after the motorist's arrest. There is no dispute that the chemical test authorized in VTL § 1194 (2) (a) is the same chemical test cross-referenced later, in paragraphs (c) and (f) concerning, respectively, administrative hearings and criminal proceedings. In *People v Odum*, we concluded that the phrase "such chemical test" in section 1194 (2) (f) necessarily referred to the chemical test in section 1194 (2) (a), which is subject to the two-hour limitation (*see* 31 NY3d 344, 351-352 [2018]). There is no textual basis for concluding that the exact same language means something different in these two paragraphs. The courts of this state and the Department of Motor Vehicles (DMV)—the legislatively appointed regulatory agency charged with the proper application of the VTL—have, for decades, concluded the same. The continued historic application of the unambiguous text of VTL § 1194 (2) (a) does not result in absurd results and thus forecloses the majority's reference to external sources that purportedly contradict the plain text. If the statute as actually written is bad policy—as the majority assumes—it is for the legislature and not this Court to rewrite the law. I dissent.

Petitioner Pedro Endara-Caicedo appeals the denial of his CPLR Article 78 petition seeking to annul the DMV's one-year revocation of his driver's license and imposition of a $500 fine based on his refusal to take a chemical test authorized by VTL § 1192 (2) (a), which the police requested more than two hours after his arrest on suspicion of driving while intoxicated. Petitioner asserts that VTL § 1194 (2) mandates license revocation and civil monetary penalties only if the motorist refuses a chemical test within two hours of their lawful arrest. The DMV maintains that a refusal at any time after an arrest is grounds

for revocation and that the chemical test referenced in section 1194 (2) (c), which provides for an administrative hearing, is not limited to refusals occurring within the two-hour period of deemed consent that the legislature recognized in section 1194 (2) (a).

"[I]t is well settled that a statute must be construed as a whole and that its various sections must be considered with reference to one another" (*Mental Hygiene Legal Serv. v Sullivan*, 32 NY3d 652, 659 [2019] [citation omitted]). "Indeed, it is a bedrock rule of statutory construction that, 'where the same word or phrase is used in different parts of a statute[,] it will be presumed to be used in the same sense throughout,' absent any indication of a contrary intent" (*id.*, quoting *Catlin v Sobol*, 77 NY2d 552, 559 [1991]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 236).

VTL § 1194 is entitled "Arrest and testing" and describes the physical tests and procedures authorized to determine the presence of alcohol or drugs in the blood of a motorist believed to have been driving under the influence. Three categories of tests are authorized: field (i.e., a breath test); chemical tests upon consent; and compulsory chemical tests mandated by court order (VTL § 1194 [1] [b], [2], [3]). A motorist alleged to be driving under the influence is subject to both criminal prosecution and administrative sanctions related to the motorist's driving privileges, including license suspension and revocation, and civil monetary penalties.

In part, VTL § 1194 (2) (a) (1) authorizes, upon the deemed consent of a motorist,

> "a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer with respect to a chemical test of breath, urine or saliva or, with

respect to a chemical test of blood, at the direction of a police officer:

> (1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section eleven hundred ninety-two of this article and within two hours after such person has been placed under arrest for any such violation; or having reasonable grounds to believe such person to have been operating in violation of section eleven hundred ninety-two-a of this article and within two hours after the stop of such person for any such violation,

> (2) within two hours after a breath test, as provided in paragraph (b) of subdivision one of this section, indicates that alcohol has been consumed by such person and in accordance with the rules and regulations established by the police force of which the officer is a member."

However, no test may be administered, absent a court order, when an arrested person refuses a "request[] to submit to such chemical test" after "having been informed that the person's license or permit to drive and any non-resident operating privilege shall be immediately suspended and subsequently revoked" (VTL § 1194 [2] [b]). The police must prepare a written report of the refusal, which serves as the basis for the temporary suspension of the arrested person's license or permit pending an administrative hearing (VTL § 1194 [2] [b] [3]).

To revoke a motorist's license under the statute, the administrative hearing officer must find, upon the evidence admitted at the revocation hearing, that: the police officer had reasonable grounds to believe the driver violated VTL § 1192; the arrest was lawful; "the driver was given sufficient warning, in clear or unequivocal language, prior to such refusal that such refusal to submit to such chemical test or any portion thereof, would result in the

immediate suspension and subsequent revocation of such person's license or operating privilege whether or not such person is found guilty of the charge for which the arrest was made"; and "such person refuse[d] to submit to such chemical test or any portion thereof" (VTL § 1194 [2] [c]). Upon such findings, the driver is subject to a one-year license revocation and civil monetary penalty (VTL § 1194 [2] [d]).

The driver is also subject to criminal prosecution, and "[e]vidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section [1192] of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" (VTL § 1194 [2] [f]).

Two points are obvious from the text. First, the statutory framework and the statute's text are intended to distinguish between three categories of tests, with only one of those tests containing a two-hour limitation. Second, the legislature used the shorthand "such chemical test" throughout the paragraphs of VTL § 1194 (2) to reference the only chemical test described in paragraph (2) (a)—that is, a chemical test that must be requested within two hours of a lawful arrest. This Court has recently explained that, "[a]s a rule, 'such' applies to the last antecedent, unless the sense of the passage requires a different construction" (*People ex rel. Negron v Superintendent*, 36 NY3d 32, 37 [2020] [citation omitted]). Under this "last antecedent rule of statutory construction," "the word 'such,' when used in a statute, must, in order to be intelligible, refer to some antecedent, and will generally be construed to refer to the last antecedent in the context, unless some compelling

reason appears why it should not be so construed" (*Colon v Martin*, 35 NY3d 75, 79 [2020], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 254, Comment at 418 [1971 ed]). We must assume that the legislature was aware of this linguistic structural rule (*see Matter of Amorosi v South Colonie Ind. Cent. Sch. Dist.*, 9 NY3d 367, 375 [2007] ["(T)he Legislature is presumed to be aware of the law in existence at the time of an enactment"]).

To the extent the DMV argues that section 1194 (2) (a) should be read to refer, generally, to the "chemical test" to which all drivers in this state are deemed to have consented—and not the chemical test as specifically limited by subparagraph (2) (a) (2)—that argument is belied by section 1194 (3), which differentiates between the temporally limited chemical test in section 1194 (2) (a) and general references to "a chemical test" elsewhere in the statute. As we explained in *Odum*,

> "Vehicle and Traffic Law § 1194 authorizes police to seek two types of chemical tests—those based upon deemed consent under subdivision (2) and court-ordered tests under subdivision (3). Section 1194 (2) is a self-contained paragraph that refers only to the 'such' chemical tests described therein, i.e., the chemical test to which a defendant is 'deemed to have given consent' (*id.* § 1194 [2] [a]). Section 1194 (3), on the other hand applies to '[c]ompulsory chemical tests,' which the statute defines as '[c]ourt ordered chemical tests' (*id.* § 1194 [3] [a]). The reference to 'such chemical test[s]' in subdivision (3) refers to the compulsory, court-ordered tests addressed in that paragraph and does not operate to eliminate the two-hour requirement from subdivision (2)" (31 NY3d at 352 n 3).

This interpretation of section 1194 (2) (c) is reaffirmed elsewhere in *Odum*, which was decided after petitioner filed his Article 78 petition. In *Odum*, we explained that section 1194 (2) (f)'s use of the phrase "such chemical test,"

"refers directly back to the chemical test authorized in subdivision (2) (a). Specifically, section 1194 (2) (f) states that it is '[e]vidence of a refusal to submit to *such* chemical test' that is admissible at trial (emphasis added), with 'such chemical test' being the one to which a defendant is deemed to have consented in subdivision (2) (a). In other words, the use of the word 'such' in section 1194 (2) (f) ties that provision back to subdivision (2) (a)—a different paragraph within the same subdivision—so that the two must be read together (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 97, Comment at 213-214, 216 [1971 ed] ['(W)ords, phrases, and sentences of a statutory section should be interpreted with reference to the scheme of the entire section . . . and the meaning of a single section may not be determined by splitting it up into several parts']). Section 1194 (2) (a) (1) provides, in turn, that a defendant is 'deemed to have given consent to a chemical [breath] test,' so long as the test is performed 'within two hours after such person has been placed under arrest for' driving while intoxicated. Inasmuch as 'such chemical test' is no longer authorized under the deemed consent provision in section 1194 (2) (a) after the two-hour period has expired, the motorist cannot, as a matter of law, refuse to take the test *within the meaning of section 1194 (2) (f)*. Any evidence of a refusal after that point must be suppressed because it does not fall within the parameters of the statute" (31 NY3d at 351-352).

The majority misconstrues VTL § 1194 (2) (c) by concluding that the mandatory findings set forth therein are the only requirements for license revocation (majority op at 2). That reading of the statute amounts to revision by judicial fiat. The majority has effectively deleted the word "such" from section 1194 (2) (c), concluding that, in the three-and-a-half years since *Odum*, the same phrase in the same subdivision of the same statute must now mean something entirely different. The majority's reference to the criminal nature of the proceeding in *Odum* fails to explain why that should alter the meaning of

identical phrases.* Consequently, this approach elides the very question before us, namely, *what* chemical test is the subject of the revocation hearing in the first instance? As I have explained, the answer is expressly stated in section 1194 (2) (c), as that paragraph applies to drivers whose licenses are suspended pursuant to section 1194 (2) (b) for refusing to submit to "such chemical test"—the same test set forth in section 1194 (2) (a).

Nor is it necessary, as the majority does, to look beyond the statutory text to resolve the interpretive question presented on this appeal. However, doing so confirms that our state courts have interpreted section 1194 (2) as I do (*see e.g. Matter of Lundin v Hults*, 29 AD2d 581, 582 [3d Dept 1967] [affirming license revocation because "the petitioner refused to submit to a chemical test and . . . the refusal occurred within a two-hour period following the arrest"]; *Matter of Donahue v Tofany*, 33 AD2d 590, 591 [3d Dept 1969] [holding that license revocation "should not be disturbed" because "petitioner refused to submit to a chemical test, and . . . the refusal occurred within a two-hour period following the arrest"]; *Sweeney v Tofany*, 30 AD2d 934, 934 [4th Dept 1968] [citing then-VTL § 1192 for the "statutory time," which was the two hours in which a refusal would be penalized by license revocation]). And so did the DMV until its 2012 memorandum (*see* 2012 NY St Dept of Motor Vehicles Op No. 1-12). Notably, that memorandum interpreting

---

* Today's majority also relies on dicta in *Odum* concerning the need to strictly construe legislative enactments in derogation of the common law (*see* majority op at 8-9, citing *Odum*, 31 NY3d at 353). In doing so, the majority has ignored the holding of *Odum*—that "the use of the word 'such' . . . ties [a] provision" in a different paragraph of the same subdivision "back to subdivision (2) (a) . . . so that the two must be read together" (31 NY3d at 351)—in favor of a secondary point seemingly intended only to bolster a conclusion reached by analysis of the plain text of the VTL.

the statute as the majority does now was drafted without the benefit of the analysis and holding in *Odum*. If the majority and the DMV are right, we would expect that the legislature would have stepped in long ago—and certainly after our 2018 decision in *Odum*—to correct this misinterpretation of the law. But the legislature did not act, further suggesting that VTL § 1194 (2) (c) does indeed refer back only to refusals during the two-hour consent period set forth in VTL § 1194 (2) (a).

The majority's reliance on legislative history is also misplaced. As a threshold matter, we may not rely on legislative history to ascertain legislative intent when the text is clear on its face (*see Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009] [only where "the language is ambiguous" may we "examine the statute's legislative history"]). In any case, the two-hour limitation has applied to chemical tests since the tests were first adopted (*see e.g. Matter of Lundin*, 29 AD2d at 582; *Matter of Kennedy v Melton*, 62 AD2d 1152, 1153 [4th Dept 1978] [noting that the petitioner's refusal of "a chemical test for intoxication in accordance with section 1194 of the Vehicle and Traffic Law" "could result in revocation of his motor vehicle operator's license" if the refusal occurred within "the two-hour period within which the test must be performed (*see* Vehicle and Traffic Law, § 1194)"]). The fact that the two-hour limitation and the deemed consent provision were in two different statutory sections does not support the majority's interpretation because the two-hour limitation has always applied to revocation proceedings, irrespective of its placement within the statute. Thus, applying the two-hour limit to license revocation proceedings was the existing approach of which the legislature was well aware. And if that is not what the legislature intended, it could have easily

corrected this allegedly erroneous application of the law when it amended the VTL in 1970

and moved the deemed consent two-hour requirement to VTL § 1194 (2). Again, it did not

do so.

As the majority correctly states, the legislature adopted the license revocation

procedure, along with various other mechanisms, to combat the scourge of motorists

driving while under the influence of alcohol or drugs (*see* majority op at 10-11). There is

no question as to the clarity of that goal—rather, on this appeal, we need only to decide

whether the words the legislature chose to effectuate that goal support the license

revocation here. They do not. Nonetheless, the statutory framework and text make clear

that the legislature *did* intend that refusals *during* the two hours after arrest would lead to

immediate license suspension and would support license revocation and substantial civil

monetary penalties. Moreover, the legislature provided police a recourse if a driver "refuses

to submit to such test" by authorizing compulsory chemical tests. VTL § 1194 (3) (a) states

that,

> "Notwithstanding the provisions of subdivision two of this
> section, no person who operates a motor vehicle in this state
> may refuse to submit to a chemical test of one or more of the
> following: breath, blood, urine or saliva, for the purpose of
> determining the alcoholic and/or drug content of the blood
> when a court order for such chemical test has been issued in
> accordance with the provisions of this subdivision."

And, of course, the driver always remains subject to criminal prosecution.

In sum, on this appeal, our task is to construe the meaning of the phrase "such

chemical test," which is used multiple times within the same statutory subdivision. That

task is easily completed, as we afforded that very phrase an unambiguous construction just

a few years ago in *Odum*: "such chemical test," as used in subdivision (2) of section 1194 of the VTL, refers to a chemical test refused within two hours of a motorist's arrest. Our conclusion here must be the same and is bolstered by the longstanding interpretation of the DMV and the legislature's inaction before and after we decided *Odum*. The majority nonetheless ignores the statutory framework and relevant rules of interpretation, complicating our otherwise straightforward task. I dissent.

Order affirmed, with costs. Opinion by Chief Judge DiFiore. Judges Garcia, Wilson, Singas and Cannataro concur. Judge Rivera dissents in an opinion. Judge Troutman took no part.

Decided February 15, 2022